Thank you. All right, we'll hear argument next in number 241734, and hear first from the appellant, Mr. Poon, when you're ready. Thank you, Your Honors, and may it please the Court. The government's position in this case is that it can violate the Constitution issuing a rule, and then when challenged, it can moot the case by taking illegal retroactive action and then keep violating the Constitution. Here Mr. Roush issued the approach rule. I mean, in fairness, that's not really the government's position. The government doesn't think there was an appointments clause violation. At this point in the proceedings, we do assume that there is an appointments clause violation due to the bifurcation. Okay, but in characterizing their position, I don't understand them to be saying that they would like to continue violating the Constitution because they don't think they did. I think what we see in the government's behavior is that it's trying to shield itself from judicial scrutiny, and that's what we see in Moose Juice as well, is that after the proceedings concluded, they only ratified in order to stop the courts from reviewing the delegations there, and the government's behavior, if it really didn't believe that it didn't violate the Constitution here, it would proceed to the merits. I mean, it's sort of weird, like basically you sue, and then the agency gives you the relief you were asking for instead of the civil servant, we're going to have the rule adopted by a duly appointed, politically accountable officer, and that's a bad thing. We should be worried about that. Yes, Your Honor. We did not get the relief we were asking for. The relief we asked for was for the rule and the delegations to be vacated, and in order to avoid that, the government took illegal, unauthorized action to ratify. And if we're talking about whether the values underlying the appointments clause have been vindicated, they haven't been. The delegations still exist, rules are still being issued under those delegations, none of the other rules have been ratified. It's clear if we look at all of these circumstances that what we're seeing is gamesmanship. The government is just trying to avoid judicial scrutiny. So can I, in terms of relief, I think this is true from your complaint, but I just want to confirm it 100%. Am I correct that the only relief you are seeking is perspective? The only relief... In the complaint. That's correct, Your Honor. We're not asking for damages. Yes. So this is a Los Angeles versus Lyons type, all I want is an injunction situation, right? We're only looking for an injunction, and this, I think, is similar to cases like Sincere or Ward versus Dixie, where the issue, the harm is also in the future, but nevertheless there was, this harm was created by a retroactive action, by changing... Okay, but what I don't understand is how, let's bracket, so there's, the rule is issued, and it's issued by someone, fine, let's assume for the sake of argument it was unauthorized during that period, but then it's issued by someone who we assume does have the authority, would have had the authority to do this in the first instance, right? There's been no challenge that the ratifier would have not had the authority to issue the rule in the first instance, right? Correct. And so then he ratifies, and now we're in the post-ratification period, and you agree that sitting here today we're in the post-ratification period, right? Yes. And you want us to enjoin that rule, right? Well, the original rule. No, no, no, you want us to enjoin, you want us to issue an injunction that would by definition only go forward in time, right? Sure, yes, against the approach rule. So the injunction would only affect things that happened post-ratification? Yes. How in the world is that retroactive? That seems like literally the opposite of retroactive. That sounds like the definition of prospective to me. So what we're talking about is a prospective effect from the approach rule. The requirements of the approach rule, so the requirements of you can't approach a dolphin, you can't swim with it, that comes from the approach rule. And the approach rule is only, if the ratification is effective, it's only effective because the ratification reached back. It's not that the rule is retrospective, it's that the ratification is retroactive. And because the ratification... But how do I know that? What if the ratification said, from this day forward, this rule is approved by me? So you're telling me it's just the literal language of the ratification? Because what if the ratifier just said, from this day forward, the rule is valid? I'm reissuing the rule under my authority. They could have done that. They could have... Isn't that pretty close to what they actually did here? No, Your Honor. What that would be would be a new final rule. What they chose to do was ratify as of, the language says, from the ratification, as of September 2021. They chose the form of ratification, which is inherently retroactive. It authorizes a past act as though it had been authorized from the beginning. And it made this choice in order to obtain the benefits, and it has to be held to that. Under Chenery, it's not fair for litigants to have to be able to defeat everything that a government official might have done. The government chose one thing. That's the only thing we have to respond to. They explicitly decided not to do the other thing. They acknowledged in their brief, they could have issued a prospective rule. They chose not to. There's no reason for the court to... Have you identified a single federal court of appeals that says that ratification doesn't cure an appointments clause problem? There is not a single federal court of appeals that has confronted whether there is... And the DC Circuit has specifically said the opposite? The DC Circuit has not specifically said the opposite. It has not said that there is statutory authority for ratification. And there has to be statutory authority for everything an agency official does. And what is the authority for the view that there has to be statutory authority for ratification? Because I also don't see you identifying... I mean, so concretely, for example, in fact, there seems to be a problem because there is one statute that says it's not, and that's the Vacancies Act, right? The Vacancies Act says that certain things cannot be ratified. Okay, well, why doesn't that seem to suggest a generally applicable principle that unless we say things can't be ratified, they can be ratified? Because there is a clear statement rule for authorizing retroactive actions. Where does that come from? That comes from Bowen and the Landgraft line of cases. But in Bowen, everyone agreed the act... I literally... Paragraph one of the court's opinion in Bowen starts by positing that what's involved is retroactive, right? Uh, sure. Just... Bowen doesn't hold what happened was retroactive. It's a premise of the court's decision in Bowen that it was retroactive. Your Honor, we have hundreds of years of case law from every court across the land that says ratification is retroactive. It is inherently retroactive. Literally what it does is... The point of it is to retroactively authorize a past act. Doesn't that then seem all the more surprising that you can't identify a single case from any federal court of appeals that says you can't do exactly what the agency did here? I think ratification hasn't been used by the agencies until quite recently, and so we don't have that many cases to begin with. So no one has raised this fundamental issue. And with respect to the FVRA, Your Honor, I think I would point you to Landgraf and St. Cyr where there were even stronger negative inferences that you could draw where there were provisions in those statutes that explicitly said, oh, we are going to apply the statute prospectively in these circumstances, which would imply that there would be retroactive application otherwise, and the court rejected this kind of negative inference in both of those circumstances. It said that the Congress has to provide for retroactivity with unmistakable clarity. Can I ask you a slightly different question, which I think is maybe not an argument that you've fleshed out, but you don't seem to rely on Lucia and our court's decision in Brooks, which both address sort of ratification of the appointment of ALJs, but I wonder if you just have a comment on this idea that Lucia, and then we make very clear in Brooks, that the ratification of the ALJ doesn't do anything to affect the ruling, in that case an adjudication, that the ALJ had made, that in fact Lucia and Brooks say it has to be done anew by a new ALJ, and so that the ratification of the ALJ's appointment doesn't solve the problem. It seems like that could be the argument you're making. I'm not sure that it is exactly, but y'all are good lawyers. I'm sort of curious why that's not the argument that you're making. Your Honor, in Lucia, our understanding of these ratification of appointments cases is that they're not really reaching back and saying this person was always properly appointed. It's a black stick. They sort of, they say that that's what they're doing, right, and in Lucia, in the footnote, the court sort of ducks the question, right, but our court in Brooks takes that question up and sort of says ratification, what you call retrospective, I'm not sure that's actually what's happening, but this ratification doesn't remedy the problem, and I would have taken you to be sort of trying to make a version of that argument, which is like ratifying going back, like doesn't solve the appointments cause problem in the same way it didn't in Lucia and Brooks. That is true. I think that's our third argument, where what we get with ratification, we know that's giving authority to someone to do a past action, and the whole point of the lawsuit is that no authority is allowed to be, no rulemaking authority is allowed to be given to Mr. Roush because he's not properly appointed. So whether you do it retroactively or whether you do it prospectively, which in fact Mr. Spinrad did do through the delegations, there is an appointments clause violation. Can I ask you a question about how your theory applies to the appointment of new, the ratification of ALJ appointments? That's not retroactive in the same way, and why is that? Because I do think that what the agencies understand they are doing is saying your appointment is ratified, and that goes back to the day you were appointed. You may have to have a new adjudication, but it's not like you were not an ALJ in the interim. But you see it differently? My understanding of those cases is that the ALJ's ratifications are going forward. We see- What makes you say that? Because I don't remember perfectly from our K&R case, but I'm pretty sure that the ratification there said, no, you're ratified as of the date of your original appointment. I think what we see- And that's how we talked about it in K&R. We said that the ratification cures any constitutional defect in the prior and original hiring. So I think we have conceived of it as retroactive in that sense. I don't think that there was the sort of retroactive effect in those sorts of cases where we say, okay, and so all of your decisions are now- I agree, but I understood the theory of retroactivity that you were describing to us today. It seems to me it would also render all of those ratified appointments invalid because they purport to do something backward looking, which is say your appointment was actually proper starting on the day you were appointed. Whether you now have the right to sort of go back and ratify everything you did is a different question. But it is backward looking in the same way that you are describing today. And so my concern now is whether if we adopt your theory, we are getting crosswise with our own precedent in K&R. Your Honor, I would say two things. One is that those ratifications don't have an impact on a regulated public. If we're saying, well, those decisions, well, maybe they're not ratified, but it's just the appointments that are ratified, that's basically a completely internal move that the ratifier- So it's retroactive, but it's okay because it doesn't have an effect on a party in the case. Okay. Well, or any effect on the public. Okay. Oh, okay. So if it has an effect on people who are not parties to the case, that's still problematic. I will just tell you what I'm trying to figure out is how the kind of retroactive period here had any effect on your client. Sure. And it does. So one thing it does is it exposes my clients to liability in that case, in that time period. And it's potential liability. But if we look at- Sorry, that time period, just meaning the pre-ratification time period? Yes. From the issuance of the rule to the ratification. It's that time period. It's about a year. And my clients were in the water during that time. They could have unwitting- The dolphins are all around in these areas. And so they could have unwittingly violated the appointment, sorry, the approach rule in that time period. And we don't know that they did, but I think I would call your attention to Saint Cyr where the- Do you take the rule as applying to like unwitting conduct?  So- Oh, absolutely. Yes. That's clear. The rule is so strict that- I see I'm out of time. May I continue? You can answer. The rule is so strict that if you are approached by a dolphin, you are required to flee. So it's not that if you just stand there or in the water, tread water there, and it approaches you that you haven't violated the rule. If you just stay there, you violated the rule. And that comes with civil and criminal liabilities. How is that unwitting? Yeah. Unwitting would be like, my back is turned and like, oh my God, there's a dolphin there. I'm liable. Yes. But no, the rule says if I realize there's a dolphin there, I have to move away from the dolphin. That's not unwitting. Well, if you- I think it's if you are in the vicinity of the dolphin, that's unwitting. You're not allowed to- No, my choice to stay there after I realize there's a dolphin there is not unwitting because that's staying there knowing there's a dolphin there. Well, you could unwittingly approach a dolphin if you're just swimming in its direction. Sure. Thank you, Your Honor. Thank you. Good. May it please the court. My name is Robert Stockman here on behalf of the Federal Defendants. We ask this court to affirm the District Court's grant of summary judgment. I'd like to just start with where the court ended. There's an exception in the rule for any person who inadvertently comes within 50 yards of the spinner dolphin. So it would not apply to someone who inadvertently comes within 50 yards of the spinner dolphin. Plaintiffs have never presented any evidence that they would have- that they did anything that violated the law during the period pre-ratification. And in fact, I read their materials to suggest they didn't. In fact, that that's what harmed them is that they complied with the law. So it is important to note that there's just no- there's no reason to think this could ever have any retroactive effect with respect to the plaintiffs before this court. There's just no facts suggesting that. I take that. But do I- just to understand your theory of what ratification is, that it's similar to the agency context, that when the ratification occurred, it made the rule valid from inception. It makes the rule valid. It relates back and makes the rule valid from the moment of inception. Totally fair. So I totally get that. And I understand like how that works here. What I'd like some help with is sort of understanding why that theory doesn't run into or at least cause conflict with Lucia and Brooks, which are our decisions, because both of them sort of say, yes, there's been a ratification of the ALJ. But now you have to go back and redo what was done with a new ALJ. So we would otherwise sort of think that a ratification of the ALJ's appointment goes back to when that ALJ was appointed. And so they were always sort of constitutionally appointed, right? So it reaches back, just like the rule was valid at exception, the ALJ was valid at inception. And if that was true, then it makes it a little hard to understand the remedy that Lucia implies and Brooks commands, which is despite that ratification of the ALJ, we got to redo the adjudication by someone who we now say was like legit. So Planets did not present this theory. I understand, but I am. Yes. But I just want to say that. And I actually think this gets to the fact that the remedy for an appointments clause violation depends on the administrative process, what the precise violation was, and what's at issue. But my point is different, right? My point is that your theory of sort of using sort of basic agency principles could be, I'm not sure that it is at the end of the day, like your theory could just be inconsistent with Lucia and Brooks. And if that's true, it's not a separate argument, right? It's just like evidence that your understanding of what ratification is, is mistaken. So that's what I'm trying to understand. That's like the legal question. I don't want to, you know, write or join an opinion that like conflicts with Lucia and  So help me understand how I would address your argument in light of this. There is no conflict with Lucia and Brooks. And I want to emphasize, it is the fact that a ratification of ALJ goes back. But we have always accepted that to remedy the appointments clause problem, Lucia says that the decision, the challenge decision has to have been made by someone who was properly appointed. But we now know that the ALJ was properly appointed because the appointment goes back in time. So we've never, we've never, I don't think that's how ratification would work in Wisconsin. We never presented that argument. But I took your argument to be that, like, once it's ratified, it's as if, right, I mean, my agent goes out, sells a horse on Monday, right? I ratify it on Thursday. It's not that it's good as of Thursday. It's good on Monday. My agent's decision, it's as if my agent's decision was my own. But that would be ratified. So when you ratify an action, even a common law, you ratify the action of the agent. You don't ratify the agent completely retroactively, right? That's not how the common law worked. It ratified. So why is that? I like this. This is the line I hoped you were going to. So why is that? So why do we think about it that way, right? So here, the action that was in the, in Lucia and Brooks, the action that was ratified was the appointment, right? And so now we look back in time and we say this ALJ was validly appointed. But the challenged action, right? The action was not the appointment of the ALJ.  It was the adjudication. But the question we have is, was there a problem, right? Was there an adjudication by an unconstitutionally appointed person? And if the ratification works like you've suggested, it seems like there wasn't. I think that's mistaking what we're saying about ratification. We say the ALJ was, it is, it reaches back in that way. But for ratification to apply, like APA cases are against agency actions, right? They're not against the employment decisions or that this person was working at the agency. The problem the court identified in Lucia was that that ALJ who made the decision, it was the final decision, had at that time not been appointed. And they said, you need to have an adjudication where the decision is made by someone properly appointed. Okay. But in the footnote, they say, now I'll stop here and I'll let my colleagues go. But in the footnote, they say, right, they were ratified, right? And if ratification means what you've told me, then that seems wrong, right? Because once they were ratified, when we look back in time, the agent selling the horse was legit, right? The same thing we've got here is the ALJ was legit. And I get it seems a little bit like a fiction, but that's because ratification feels that way. Your honor is proposing a theory of ratification that is more expansive than the government, to my knowledge, has ever proposed, which is sort of a total cure-all of the past. No, no. I'm not saying it's a cure-all of the past. I'm saying what it did is it cured the action. What was the action? The ratification. So the action here was the rule. And that, what Lucia said, is that what someone who has a successful appointments clause challenge should get, the remedy, is a decision by a properly appointed officer. That is what plaintiffs received in this case. Administrator Spinrad came in, looked at the record just as he would have if he had made the decision in the first instance. I mean, rulemaking is different than adjudications. And this is very important. At the final decision, it's all on the paper. So he looks at it, and he says, this is a proper rule. I know the record. I make an independent judgment. I'm a public officer. I make this judgment. And so that cures that appointments clause problem. I don't think- So can I ask maybe this last question, and then I'll stop. I'm sorry. Do you think Lucia would look different if what the SEC did was not ratify the appointment of the ALJ, but instead ratified the adjudication itself? Yes. And it's actually, I would recommend- And why? Why would that be? So, but I think the key thing is it would look different, but because of the nature of adjudications, the SEC wouldn't do that, because the- Why not? They have the authority to do that, right? Well, they would have to revisit it, right? They'd have to revisit it, and they'd have to do the steps that an officer has to do as part of revisiting it. So that could be different. And I think if you read intercollegiate broadcasting, which is a DC Circuit case, it really gets into this remedy issue in an interesting situation that is sort of between rulemaking and adjudications. And the point is a public officer has to do the things a public officer has to do. But that doesn't mean you have to start all the way from scratch, but it also means you can't just- You have to do all the things an officer has to do. And one thing the court was saying in Lucia is that ALJs are special, right? They take evidence. They have all these roles that they said, these are the things that make this person an officer. So for the SEC to step in and ratify it, it would at least have to do the things an officer has to do in an adjudication. I'm not familiar enough with SEC law to know exactly where that line is. The point you're making is maybe to ratify in the adjudication context, they would have to hold a hearing and take evidence and those sorts of things. I understand that distinction, right? But your point is if they did ratify the adjudication in a proper way, then there would have been no problem. Yes, that's correct. So your argument is the same thing here. Your person did what he needed to do, didn't need to have a hearing because it wasn't an adjudication to ratify the rule itself. Yes, and I really think intercollegiate broadcasting is a great example of this because they had new officers come in and revisit something where prior officers had gone through a lot of process. And the agency found we have to do these things anew, but we don't have to do everything anew. And the D.C. Circuit said that cured the Appointments Clause problem. And I think that's the key thing is I do think it's dangerous. I think plaintiffs' arguments often sort of involve going to a high level of generality. And while that's very valuable, it is important to be in the details of this case and what this is about. And this is a rulemaking. And the great thing about rulemakings is the officer comes in at the end, right? The officer doesn't have to conduct each aspect of the comment process. They don't create the docket. They don't have to collect each study. They look at the full record that's before them, which parties outside get to participate in, and they make a final decision. And thus, Administrator Spinrad was able to ratify because he was doing exactly what he would have done if he had been the final decision maker in the first instance. So I think rulemaking is a context, at least under these statutes, where ratification certainly works. How it works in the adjudicatory context varies. And I also just offer some caution. This court in Brooks, I think, read Lucia broadly to say it always requires re-adjudication. I think that is generally the rule. But for example, the Ninth Circuit in Decker found that an ALJ had received a case. It was on his docket. But he was ratified a couple weeks in, long before he'd taken any significant actions. And the Ninth Circuit said, well, that doesn't mean it has to be reassigned, right? He hasn't yet acted as the officer. So there has been no Appointments Clause violation that needed to be cured. So is this basically an argument that Brooks is already a pretty aggressive reading of Lucia, and you'd urge us to not go even further with an even more aggressive reading of Lucia? I would recommend that. And I think Brooks and Lucia are, I think that's a reasonable reading of Lucia. But I would not recommend going further. And I think this gets to a core issue, which is that a constitutional problem can be cured. A lot of plaintiffs' argument is based on this idea that it's sort of an incurable problem. So can I take you to the remedy question that I, for me, is actually maybe the hardest question in this case, which is, OK, so let's posit they filed suit pre-ratification, but now we're in the post-ratification period. So to me, the hard question involves the pre-ratification to ratification period. That just strikes me as moot. I know the D.C. Circuit says that's a merits issue, but to me, that sounds like Article 3 mootness. So it often, every court to resolve it has said that it is a merits resolution. Yeah, but I read all the D.C. Circuit's opinions, and with love and respect, I don't find any of them remotely persuasive in explaining why. So I think, I understand there is a bit of a justiciability question there, right? Is it mootness? Is it that they've sort of, the remedy's already been provided? You're asking for an injunction against a period of time that is over involving the validity of a rule whose problem, such as it existed, has now been cured. Everything I'm saying strikes me as Article 3 mootness. So I think the key thing is that if that had been the remedy they were asking for, maybe we would be in a mootness world, but of course, the remedy they want is perspective, right? Well, no, so I guess, but tell me what, if anything, would be wrong with saying this. To the extent they are still, to the extent they are at this moment seeking to challenge the rule's validity from the issuance to the ratification period, that is moot, moot,  To the extent they are challenging the rule going forward, that claim fails on the merits. I've not thought about this precise question. I think it's just not presented, right? It's not in the case. We can't jump past Article 3 mootness. Well, but I think, you know, that there is, that their overall case loses on the merits. Is sufficient resolution. The fact that there might be an aspect of something they'd like to argue about that's not presented is moot. I don't think the court needs to resolve because it's not presented. It's not in the case. This is different, for example, than if that were still a live issue in some way, such as they were facing a challenge for actions they had taken during that time. But they don't. The government is threatening to sanction us for something we did during that window. Yes, and that simply is not present. So because it's not present, I don't think the court has to opine on it. But I take their argument, maybe I'm, maybe he'll explain differently on the plot, but I take their argument to be like the ratification is just void, right? That like, not that it's fixed things going forward, that it's as if the administrator said gobbledygook, right? It just doesn't mean anything because he lacked the authority. I'm not saying he's right, but when we think about mootness, we sort of tend to accept that they would prevail on the merits. But if that's true, I might think the argument is gobbledygook. But like if we thought all that happened here was gobbledygook, then they would, in theory, be entitled to a prospective injunction because, in fact, we would say that the administrator did not lawfully ratify anything, and we would still have, we'd have this problem going forward in the same way. So two answers to that. I do, I do think that's one version of their argument is that it's void, and that might, in their theory, form a basis for prospective relief. First, the, several circuits have wrestled with this argument of, well, it's void, so you can't ratify, and they've rejected it. That's Moose Juice, that's Legitech, it's also the Second Circuit and NLRB, which we cite in our briefs. So the voidness issue has been rejected by multiple courts, but I also, I think their argument to try to get there, they actually are saying that there isn't the statutory authority to ratify, and the problem they face there is that it's, it's, it's not supported, and in fact, this, the, if you look at both the- That's a merits question, not a mootness question. That's a merits question, yes. Right? Like, I understand your merits argument, but we, we tend to look at the mootness question by saying, if they are right that statutory authority is required, and if they're right that statutory authority is missing, well, then would they be entitled to prospective relief? That seems like a plausible argument. And that's why, to the extent they're seeking prospective relief, I, I, we would say they lose on the merits, and it's not a mootness thing, but I think to the extent the, the question is about, well, what about this period that's now passed? I think there are several problems with that, but one is that it just isn't relevant anymore, right? It's, it's passed. Why, why would it be covered by the complaint? Because the complaint is only seeking prospective relief. It's not covered by the complaint. That's, that's also a challenge. And, and, it's not, this is not that they just fail to plead it. The APA doesn't provide that kind of relief, right? It doesn't provide that kind of retroactive relief for the period you've been subject to a rule during its litigation. So can I ask you, I'm going to, this is a completely different topic. So I, I have now just re-read again footnote five in Lucia, and it strikes me as like a, where the court explains why it's picking the remedy it does, and I hear, I see a lot of very pragmatic language, like as like, otherwise no one's going to bring an incentive, but you know all the reasons. I read that as a, just a very pragmatic justification for that remedy. And one of the arguments your colleagues on the other side say is like, think through the implications of saying that this is okay, and they tell a story, and the story is, the government violates the appointments clause, someone points out the government violates the appointment clause and sues them, the government fixes that violation of the appointments clause, and then just continues bopping along, doing the same thing over and over again, and every time they do something like this, someone moots. That seems to create bad incentives, and at least arguably is intentioned with Lucia is like, we do need to think about, will anyone ever have any incentive to raise the claim if the government gets to do what the government did here? Would you, why should I, I assume you think I should not worry too much about that. Why should I not worry too much about that? So first, it's, it's not, it's not the case that we always ratify when someone brings an appointments clause challenge. Yeah, but they say you do it quite a lot. I mean, they say that, but they haven't actually pled that or proven it. And that, that is important, right? They can say and speculate all they want. If they want to bring some kind of pattern and practice type challenge, they need to plead that and prove it up. And they haven't. And it's not as though- Okay, fine, fine, fine, fine. It's not as- I was, I was an executive branch lawyer before I was a judge. If I was still an executive branch lawyer, I might just say, get hit with an appointments clause challenge. Just ratify it. It's fine. Just make it a go away. Well, we, we do not advise our clients to, if there were an appointments clause issue, we would advise our clients to solve it. And the reason we ratified here is in part because if you read Alpha Seafood International, which is a district court case, but we signed in our brief. In that case, the district court said, you know, it's actually a little tricky to me, this issue of who exactly made this decision. Why don't you just ratify this? And we did, and we solved it. And in many ways, this was judicial economy. It solved everyone's problem here, right? It gave them exactly what they asked for. This is a particularly important rule, or this is a, is one of many important rules. And we decided this was the cleanest course of action that solved everyone's problem going forward. Can I, that's actually very helpful to me. I also was wondering about the decision to ratify, because am I remembering right that your legal theory is that the inferior officer can promulgate the regulations, but there's also a factual dispute about like who exactly had the most say in this regulation. And that's what you're trying, like, that's really not worth the ball of wax. That was not worth the ball of wax, and it was much simpler because we could produce a very limited administrative record that just went to ratification. The actual administrative record for this rule would have been vast. So there were a variety of reasons this was in the interest of judicial economy, and it gave the plaintiffs what they wanted. And we thought this was the right course of action. In this case, I don't think they have established that this is always our course of action, and I wouldn't say it is to my knowledge. And then on, well, and I just would also like to note that the Vacancies Reform Act does further support our argument. When Congress knows that presumption is ratification, and it can, it knows that and has chosen not to foreclose it generally. I see my time is up. We ask this Court to affirm. Thank you very much. Thank you. Mr. Poon, you've got time on rebuttal. Thank you, Your Honor. If a district judge within the circuit delegated case-deciding power to a law clerk, and, I mean, and those cases came up, and every time it was challenged, the judge just ratified, this Court would not say, it's powerless to fix this issue. There is something seriously wrong here when there is a continuing, this continuing delegation. Why wouldn't we just think there's no problem? Because phew, it's not the law clerk making the decision. The district court made the decision. In that instance, perhaps. Okay. But if every time it's challenged. That's fine. If every time, if every time the district court actually makes the decision. That would bring up the Lucia problem, because people will stop challenging it. And then there will be this shadow body of law, a shadow CFR here, or a shadow FSUP below, that would, that would kind of be law, because at any point, it can be ratified and become real law. Are my clients supposed to bring a lawsuit every time a Marine Mammal Protection Act regulation is issued in order to force the administrator, no administrator, to make a  That means there is never actually a final agency action until we bring a lawsuit and until the no administrator actually makes a decision. And in the meantime, are we supposed to comply with these regulations? That's a serious practical problem. Can I ask you a question? I am really trying to figure out the harm here. And I'm wondering whether, does like Lope or Bright have a role to play here? Like, if you don't like the approach rule in the new world in which we live, if you've got like, why don't you just say, yeah, I got right up close to the dolphin, but I don't think it was a take. So who cares what the regulation says? Like, what's the big deal about the regulation these days? Do you see what I'm saying? Like, the statute's always been the same. Statute is properly promulgated. It says what it says. And now we know that that's really what matters. So I don't quite understand, why is your client in such a fix? I'm sorry, the hypothetical client who wants to swim with the dolphins. Well, also my real clients. But I think that goes to the statutory authority, sorry, yes, that goes to the statutory authority for the regulation. And the Appointments Clause is even more important. It's about who is regulating us, who has power over our lives, over our professions. But they don't have that kind of power over you anymore. Congress has the power. And if you think you should be able to get closer to a dolphin than the agency does, why don't you just bring, you know, a case based on the fact that you are both, even though you are out of compliance with the regulation, you are in compliance with the statute. So I just am not understanding why the regulation is, what exact harm the regulation is causing now that it is no longer sort of presumptively consistent with the statute, just because the agency says so. Well, that's, I mean, that's a separate claim, I suppose, it's just, we don't think that Super Brighton means that statutes can't support these sorts of regulations anymore. But it is clear that a properly appointed official has to issue them. On the matter of prospect- I'm sorry, your real client who wants to swim with the dolphins, does the client think that if he or she comes within 50 yards of a dolphin, they are out of compliance with the statute? I mean, I assume your client wants to obey the statute, right? Yes. Okay. So is your client of the view that they would like to get closer to the dolphin and that would be consistent with the statute? I think so, yes. Yes, that's what, that's my view, at least, that's what I would advise my client. Okay. And the statute is what controls? Yes, the enforcement provisions are from the statute. On the issue of prospective relief, declaratory relief here would also give us retrospective relief as to that retroactive period, because it would tell us that the regulation was not valid during that retroactive period. So it's not- So I guess another way to think about this, whether it's mootness or something else, here's another way to think about it, like, I know all these cases that say the essence of a constitutional controversy, right, Article III in general is courts can't issue orders that don't have any actual effect in the world. So in this case, how would an order addressing the legality of the rule during the period I've identified have any actual effect in the world? It would protect plaintiffs from liability during that period, and- Your client hasn't alleged that anyone's threatening to do anything to them based on what happened during that period. And there's an exception to mootness, which is voluntary cessation, which is very clearly what is happening here, that they are voluntarily ceasing their appointments clause violation, and then they have this policy, this delegation is the policy, of continuing to issue regulations that will bind my clients. And doesn't this court have a decision saying a declaratory judgment can't solve a mootness problem? Haven't we literally said that in a published opinion? I'm sorry. That was a second point. The voluntary cessation point is that going forward, they will have this- No, but you opened by saying the declaratory judgment sticks, is that this court has said a declaratory- If to the extent you have a mootness problem, the fact that you ask for declaratory judgment doesn't fix it. Yes, the declaratory relief issue was just as to the retrospective, prospective relief question. I'd just conclude by saying that the idea that there is a future effect, that doesn't mean that there's no retroactive action. I'd point you to Olatunji and Ward, which control here, and I see my time is up. Thank you very much. We will come down and greet counsel and then take a very short break before the next case. This honorable court will take a brief recess.
judges: Pamela A. Harris, Julius N. Richardson, Toby J. Heytens